UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LAPKONG LEUNG and L&S TECHNOLOGY LLC, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:05-cv-1826- SEB-JMS |
| PATRICIA HAINES and CHIMNEY ROCK INFORMATION SOLUTIONS, INC., | ) ) ) | |
| Defendants. | ) | |

### **ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before us on Defendants' Motion for Summary Judgment (Doc. #83). For the reasons discussed in this entry, that motion is granted in part and denied in part.

### *Background*

Lapkong "Rick" Leung met Patricia "Patty" Haines in 1999 while both were consulting on a technology project for the Pillsbury Company. Haines had her own one-person consulting company, Chimney Rock Information Solutions, Inc. ("Chimney Rock"), which she principally used to service subcontracts referred to her by larger computer consulting companies. Leung was a direct employee of one of those larger consulting companies, Daman Consulting, when he first met Haines. After working with Leung on the Pillsbury project, Haines moved on to work on another subcontract she had received. She persuaded her next client that Leung would be a good addition to the project

team, so Daman Consulting was contacted and agreed to assign Lueng to that project.  Thereafter, Haines, through Chimney Rock, and Leung, as an employee of Daman or subcontractor of Synapse Technology ("Synapse"), worked together as subcontracted consultants on several technology projects between 1998 and 2002.  In October of 2001, Leung left his position as a direct employee of Daman Consulting and established his own one-person consulting entity, L&S Technology LLC ("L&S").

In 2001, Chimney Rock obtained another subcontract from Synapse, which had a prime technology consulting contract with Eli Lilly and Co. ("Lilly") in Indianapolis.  Haines again recommended that Leung be added as a team member for that project and Synapse retained L&S as a subcontractor, thereby allowing Leung to become a member of the Lilly project team.  Haines and Leung  worked on the Synapse/Lilly project through the end of 2002, when the term of the Synapse work order approached an end.  At the suggestion of team members from Lilly, Haines and Leung began looking for ways that they could continue working on Lilly technology projects by contracting  directly with the company.

With the assistance of an attorney whose fees they jointly paid, Haines and Leung decided to have Haines negotiate with Lilly through her business entity, Chimney Rock.  Her efforts met with success in 2003, when Chimney Rock landed a prime consulting contract with Lilly.  Pursuant to the plan that

Haines and Leung had previously devised, Chimney Rock subcontracted with L&S which allowed Leung to join the consulting project.

There is little in dispute regarding the terms of the agreement reached between Haines/Chimney Rock and Leung/L&S.  The terms generally are set out in an e-mail chain and spreadsheet.  After negotiations with Lilly over the rates Lilly would pay them, Haines and Lueng agreed that L&S would receive $105 per hour for Lueng's hours that were billed to Lilly at the rate of $155, plus an additional five per cent (5%) of all other subcontractor fees that would be billed to Lilly.  Chimney Rock would receive the hourly fees paid by Lilly for Haines's billable time and ten percent (10%) of the fees Lilly paid for all subcontracted work.

A portion of the earnings from this venture were to be reserved to cover potential legal costs that might result if Synapse were to bring a non-compete action against Haines, Lueng and/or their companies.  The remainder of their earnings were to be divided - sixty per cent (60%) to Chimney Rock and forty per cent (40%) to L&S.  As a part of their agreement, Lueng/L&S was to help Haines/Chimney Rock with the administration of the project, including subcontractor oversight, invoice preparation and the like.  Whether the agreement amounted to a "partnership" as that term is technically defined remains in dispute between the parties.  Nonetheless, all agree that the pursuit and execution of the Lilly consulting contract was conducted by Haines and

Lueng acting together, and Chimney Rock was selected by them both to be the prime contracting vendor, primarily because it was a corporation as opposed to a limited liability company, which was L&S's business form.

Things apparently proceeded well in 2003; in fact the work they were able to generate from Lilly was far more than either had initially expected, given that they were a relatively small consulting vendor. Perhaps because of the unanticipated magnitude of the work they received from Lilly, the relationship between Haines and Lueng began to deteriorate as time went on. Haines claims that Lueng's administrative assistance on the Lilly project slowed to a virtual stop. Based on this failure to contribute, Haines at first reduced, and finally ceased making the percentage-based payments to Lueng. Lueng counters that it was Haines who lost interest in the Lilly project and in another project as well that the two had entered into with the State of Wyoming. He also testified at his deposition that Haines began directing her efforts to other projects that were not related to computer consulting and with which he was not involved. Lueng contends that eventually Haines stopped providing him with key information regarding project expenses and income. While L&S continued to receive lump sum payments from Chimney Rock, Lueng claims Haines withheld all the substantiating information regarding earnings, which, if disclosed, would have supported much larger payments to L&S.

On November 8, 2005, Lueng filed a lawsuit against Haines in state court

seeking injunctive relief in the form of enforcement of their contractual obligations. Because Lueng is a citizen and resident of Texas and Haines, of Colorado, Haines removed the Indiana state court action to this court. Amendments have been made to the complaint during the time while the case has been on our docket, including the addition of L& S and Chimney Rock as an additional Plaintiff and Defendant, respectively. Plaintiffs' claims of fraud and constructive fraud were dismissed, leaving three counts in dispute: a breach of contract claim, a demand for partnership accounting and dissolution based on breach of partnership fiduciary duties, and a claim of unjust enrichment. Defendants Haines and Chimney Rock contend in the instant motions that they are entitled to summary judgment on each of these remaining claims.

### *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party must shoulder the initial burden of demonstrating the lack of any genuine issue of material fact. Nevertheless, if the nonmoving party bears the ultimate burden of proof on an issue, then that party can avoid summary judgment only

by setting forth "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

The evidence must be construed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Only factual disputes that have a bearing on the outcome of the lawsuit, in light of the substantive law, will preclude summary judgment. *JPM, Inc. V. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). A mere scintilla of evidence in support of the nonmovant's position is insufficient; the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. 251-52. Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). If genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment must be denied.

### *Discussion*

The first issue we must address in resolving this motion is a determination of what law applies. Defendants contend that Colorado law applies in resolving the breach of contract and accounting claims, but not the

unjust enrichment claim. They offer no explicit explanation for why Colorado law would not also apply to the unjust enrichment claim, but argue that the other two counts arise from a contract that was negotiated by the parties located in different states and, because payments were to be made from Chimney Rock's accounts located in a Colorado bank, Colorado must be deemed to have the most direct and important contacts with the dispute. We disagree with this approach.

A federal district court sitting in diversity applies the conflict of law rules of the state where it is located. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Here, under Indiana law, the most intimate contacts test under its choice of law rules is to be applied in resolving disputes based on contractual relationships. *American Employers Ins. Co. v. Coachmen Industries, Inc.*, 838 N.E.2d 1172, 1178 (Ind. App. 2005). In determining which state has the most intimate contacts, we consider the following factors:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the parties' domicile, residence, nationality, place of incorporation and place of business.

*Id.* at 1177. Each of these factors is to be examined in light of its relative importance to the subject matter. *Id.*

In the case at bar, the primary contract discussions and negotiations were conducted via e-mail by the principals while each remained at their respective homes, but certain discussions occurred while both were in Indiana. More importantly, the subject matter of their partnership was the Lilly project, which was to be performed in Indiana. Since both the place of performance and the location of the subject matter of the agreement were situated in Indiana, those contacts trump the other factors which are evenly split between Texas and Colorado. Accordingly, Indiana clearly has the most intimate and significant contacts with this dispute. We note in passing that the choice of law issue is not likely to make a real difference in the final analysis, because the contract principles applicable here are so basic as to be essentially the same in every state.

Defendants' first argument is that there is no basis for an unjust enrichment claim in this case because the parties admit that an agreement had been reached between them and unjust enrichment, which is quasi-contractual remedy, arises only in circumstances where no contract governs the relationship between the parties. *Ball v. Versar, Inc.*, 454 F.Supp.2d 783, 811 (S.D.Ind. 2006); *Troutwine Estates Development Co., LLC v. Comsub Design and Engineering, Inc.*, 854 N.E.2d 890, 896 (Ind. App. 2006). We agree with Defendants on this point. It is undisputed that an agreement was reached between the parties and that their dispute involves their conflicting assertions concerning which of them ceased performance under that contract. A quasi-

contractual remedy is therefore inappropriate.

Defendants' request for summary judgment on the other two counts is premised on its contention that, contrary to the allegations of Plaintiffs, there was no "partnership" formed between them, as that term is interpreted under Colorado law.[1]  As we have previously determined, Indiana law applies to this action.  In whatever fashion Plaintiffs choose to characterize the relationship between them and Defendants in their pleadings, it is not determinative of the manner in which the Court must analyze their claims.  Federal rules and case law require us to interpret a complaint generously through the dismissal stage, given that the only function of the pleadings is to provide adequate notice of the claim to the defendant.  *Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 854(7th Cir. 1999).  Following the dismissal stage, Plaintiffs must develop the details of their entitlement to relief.  *Id.*  Here, Plaintiffs base their claim on the undisputed fact that a contractual  agreement was reached between L&S/Lueng and Chimney Rock/Haines.  However one characterizes their relationship, for purposes of Count I, such description is immaterial because that claim is nothing more than a plainly straightforward breach of contract claim

---

[1] In this section of their brief, Defendants assert in the title that there was no "partnership" or "joint venture" here.  However, nowhere in the body of the brief do they include any argument regarding the lack of a joint venture, apparently believing the two terms are interchangeable.  As we note later in this entry, such is not the case.

In contrast, Count II seeks a remedy that depends on the type or form of the relationship entered into by the parties under the Uniform Partnership Act, as codified at Ind. Code §§ 23-4-1-1 – 23-4-1-52, which sets forth the obligations of partners and, among other things, the entitlement to an accounting. Generally, the essential elements of a partnership are: (1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. *Byrd v. E.B.B. Farms*, 796 N.E.2d 747, 754 (Ind. App. 2003). There is conflicting evidence of record here on this point because certain e-mails and deposition testimony establish that, on various occasions, Lueng and Haines both described or referred to their relationship as a partnership. However, there are other instances in which they spoke of their joint efforts as a "venture."

"A joint venture is similar to a partnership except that a joint venture contemplates only a single transaction." *Id.* The facts establish that, in addition to the Lilly project, Haines and Lueng together assumed responsibility for completing a contract with the state of Wyoming. Apparently, however, Lueng/L&S are not claiming any entitlement to payments or damages with respect to that project. Clearly parties can agree to undertake two separate joint ventures. Thus, whether a relationship at any given time is a partnership or joint venture turns on issues of fact and, as the record currently stands, there is evidence to support either or both characterizations, which thus

necessitates a jury's resolution.

Defendants next claim that the agreement between Chimney Rock and L&S was terminable at will and that Haines/Chimney Rock simply terminated their agreement prior to any entitlement for payment arose on the part of Lueng/L&S.  Defendants contend that the subcontractor relationship between them and Lueng/L&S was an at-will relationship which either could terminate at any time.  To make this argument, however, Defendants must distort certain deposition testimony by both Lueng and Harris regarding the pecking order that existed under the prime vendor contract with Lilly.   While Lueng testified that, as the prime vendor, Haines/Chimney Rock  had the power to fire a subcontractor, he did not testify that she could fire L&S or himself.  Defendants appear to focus on certain of the elements of the contractual relationship between Lilly and Chimney Rock and import them into the agreement between L&S and Chimney Rock.  There is no basis for such a shift of terms.  Quite apart from the parties' relationship to Lilly, Haines's own deposition testimony makes it clear that she and Lueng jointly agreed to pursue the Lilly work together for which they would use Chimney Rock as the contracting vendor.  The fact that the vendor agreement with Lilly provided Chimney Rock/Haines, as opposed to Lueng/L&S, with certain authority over subcontractors did not establish a priority in Defendants' favor vis-a-vis Plaintiffs.  Under these undisputed facts, we conclude that Defendants did not secure the right to unilaterally terminate, without notice or cause, the

agreement between them and the Plaintiffs.

Finally, Defendants in their motion seek to focus attention on the individuals, as opposed to the entities named in this action, contending that the deposition testimony of both principals establishes that neither Haines nor Lueng, individually, was a party to the contract and therefore can not individually recover or be held liable. Lueng appears to concur, based on his deposition testimony, that L&S did not have a contract with Haines, individually. However, Lueng also clearly contends that Haines operated Chimney Rock for her own exclusive personal benefit and that they both, as individuals, were simply attempting to create a structure by which each could personally continue working in Indianapolis on Lilly projects.

Courts are generally reluctant to pierce the corporate veil; however, the Indiana Court of Appeals recently upheld the piercing of a single shareholder entity in the case of *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494 (Ind. App.2007). There the court ruled:

> ... A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Gurnik v. Lee*, 587 N.E.2d 706, 710 (Ind.Ct.App.1992).
>
>      In deciding whether the party seeking to pierce the corporate veil has met its burden, Indiana courts consider whether the party has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to

>promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Aronson v. Price*, 644 N.E.2d 864,867 (Ind.1994).

*Four Seasons Mfg.*, at 504.

Clearly in the case at bar some personal manipulation has occurred by both Haines and Lueng in the management of their respective corporations. Like many sole shareholder corporations, they were created to afford Haines and Lueng, individually, with certain corporate protections while also allowing the companies with whom they were going to do business to interact with them as independent contractors, rather than as employer and employee. Based on the evidence of record, a fact finder could conclude that the agreement at issue here was actually Haines's individual agreement with Lueng to use her corporation to secure business from which the two of them individually would share the profits. Whether such an arrangement was actually the agreement they reached and thus was between two individuals rather than their corporate entities is a distinction without a difference, if it is established that Haines or Chimney Rock failed to live up to their obligations when Lueng performed as required.

The equitable power to pierce the corporate veil would allow the Court to prevent Haines from hiding behind Chimney Rock if, at trial, the fact-finder

determines that she made enforceable personal promises which she later reneged on.  *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 462 (Ind. App. 2000).  We are not able to conclude at this point that promises were in fact made that were personal or that the Chimney Rock corporate identity was manipulated for an unjust purpose.  Nevertheless, based on Haines's own testimony and her e-mails that have been introduced into evidence, it could reasonably be inferred that the corporate identity was the *sine qua non* of their cooperative dealings with third parties, and that Chimney Rock became the front for their work as individuals, rather than through the corporation. Because the evidence does not foreclose the possibility that the corporate veil must be pushed aside, and because at least some evidence suggests that both Haines and Lueng maintained less than clear lines between their corporate and personal activities, we decline to relinquish that equitable option at this point in the case.

### *Conclusion*

Having now worked through two somewhat challenging and time-consuming motions, we have reached the opinion that both sides in this dispute seek to make this case more difficult than it really is.  This is a garden variety breach of contract action, the resolution of which turns on how evidence will preponderate on the issue of each party's performance under the contract.  Questions of material fact remain unresolved and the credibility of

the witnesses will be of paramount importance in unraveling the details of their unwritten agreement and determining the extent to which each party performed the promises under the contract.  Credibility is not an issue to be resolved at the summary judgment stage.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Defendants have convincingly argued that the claim of unjust enrichment against them is inapplicable where it is stipulated that a contract existed which controlled their relationship.  In all other respects, Defendants' request for summary judgment fails, due to the remaining questions of material fact which a jury must decide.

Accordingly, Defendants' Motion for Summary Judgment (**Doc. #83)** is GRANTED IN PART, insofar as Defendants are entitled to summary judgment in their favor on Plaintiffs' claim of unjust enrichment, but DENIED in all other respects.

**IT IS SO ORDERED.**

Date: 10/31/2007

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Steven T. Fulk
FULK & ASSOCIATES
stfulk@fulk-assoc.com

David E. Wright
KROGER GARDIS & REGAS LLP
dew@kgrlaw.com